# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARC HOSTETLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-01564-TWP-TAB |
| ) | |
| CITY OF SOUTHPORT, acting by and through ) | |
| its police department, THOMAS L. VAUGHN, ) | |
| individually and in his official capacity as Chief of ) | |
| Police, and JASON SWANSON, ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on the Partial Motion for Judgment on the Pleadings (Filing No. 12) filed by Defendants City of Southport ("Southport"), Southport Chief of Police Thomas L. Vaughn ("Vaughn"), and Jason Swanson ("Swanson") (collectively, "Defendants"). Following the search of his friend and co-parent's home, Plaintiff Marc D. Hostetler ("Marc"), filed this action asserting a violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983 ("§ 1983") due to false arrest and illegal search, as well as state law claims for false arrest, malicious prosecution, trespass, negligence, defamation, and intentional infliction of emotional distress. For the reasons stated below, Defendants' Motion is **granted in part** and **denied in part.**

## I.  BACKGROUND

The following material facts are not in dispute and are viewed in a light most favorable to Marc as the non-moving party. This case and its companion case, *Shara Hostetler v. City of Southport,* 1:17:1564-TWP-TAB, both arise out events leading up to (and including) April 25, 2015, which culminated in a search of Shara Hostetler's ("Shara") home, and Marc's arrest. Shara

and Marc are co-parents and live separately. At the time the search warrant was executed, Marc was present at Shara's house caring for their son. ([Filing No. 1-1 at 5](#).) Also at the time of the search, Shara was running for Clerk-Treasurer of Southport, Indiana, in a very tight race against an opponent, Diane Bosingham, who employed Chief Vaughn's wife, Jane Vaughn, as the Chief Deputy Clerk of Southport. *Id.* Chief Vaughn was supportive of Diane Bosingham, who was running for re-election against Shara. *Id.*

Marc alleges the following: Chief Vaughn offered to hire Swanson as a police officer with the Southport Police Department ("SPD") if Swanson could find a way to arrest Marc. *Id.* at 2. Chief Vaughn informed Swanson that Marc was impersonating a police officer and carrying a gun. *Id.* at 4. Swanson presented Chief Vaughn's information as an "anonymous tip" to obtain a warrant to search Shara's home at 7820 Partridge Road in Southport, Indiana. *Id.* However, in the probable cause affidavit to the court, Swanson mispresented this address as Marc's house. *Id.* The search warrant was executed on April 25, 2015, by Swanson and other Southport police officers. Shara's personal handgun (which she kept under her mattress), and other items were seized during the search. Several days later, Swanson threatened to arrest Shara and remove her children from her custody for child endangerment because she kept a handgun in her house. Swanson told her she could avoid arrest by stating that the handgun belonged to Marc. Shara maintained that the handgun belonged to her. *Id.* at 5. Swanson arrested Marc for the impersonation of a police officer and possession of a firearm by a serious and violent felon, based on the gun seized from Shara. *Id.* at 5 ¶ 21.

Swanson subsequently executed another search warrant, based upon the evidence seized from Shara's home, this time on Marc's residence at 2807 Punto Alto Circle, Indianapolis, Indiana. *Id.* at 6. The search yielded some old uniforms and police memorabilia that apparently Marc did

not return from previous law enforcement employers SPD, Marion County Sheriff's Department, Homecroft Police Department, United States Army Military Police, Perry Township Constable's Office, Marian College Police, and the Indiana War Memorial Police. *Id.* at 6. Based on evidence seized in the second search Marc was additionally charged with theft and other charges. *Id*. at 6 ¶26. All charges were later dismissed. *Id.* Shara was not charged with any crime. Following Marc's arrest, Chief Vaughn hired Swanson as a full-time employee of SPD. *Id.* at 7. Ultimately, following the negative publicity associated with the search of Shara's residence and the arrest of Marc, Shara lost the election for Clerk-Treasurer by 17 votes. *Id.* at 6. Marc lost employment, perspective pending employment, financial costs of incarceration and attorney fees, court appearances, emotional and mental distress, time away from his son, additional child care costs, defamation of character, and loss and damage to property. *Id.* at 6-7.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed the complaint and answer. Rule 12(c) motions are reviewed under the same standard as a motion to dismiss under 12(b)(6). *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The facts in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment

based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

### III. DISCUSSION

Southport moved for partial judgment on the pleadings asserting that Marc's claims failed to state a claim upon which relief can be granted, and as to the state law claims the officers are entitled to immunity under the Indiana Tort Claims Act ("ITCA"). ([Filing No. 13 at 3-4](#).) Marc withdrew his state law claims against Southport for malicious prosecution, trespass, negligence, defamation, and intentional infliction of emotional distress. Therefore, Marc seeks only to maintain his state law claim for false arrest against Southport. ([Filing No. 23 at 6](#).) ("Plaintiff does not object to the Motion as to the state-law claims other than his claim for false arrest, which claim is not a part of Defendants' Motion.") The claims that remain are claims under § 1983 for the illegal search and false arrest (including claims against Chief Vaughn in his official and individual capacity), a *Monell* claim for municipality liability, and the false arrest state law claim. The Court will address each argument in turn.

**A.    Federal Claims**

Defendants concede that they are not seeking partial judgment on the pleadings on Marc's Fourth Amendment unconstitutional search and false arrest claim. ([Filing No. 13 at 1](#).) Defendants assert that Marc has failed to allege a valid *Monell* claim against Southport or Chief Vaughn in his official capacity, and that the claims against Chief Vaughn in his individual capacity also fail under § 1983.

**1.  *Monell* / Official Capacity Claims**

In order to find a municipality liable under § 1983, the plaintiff must prove that a municipal policy or custom caused their injury. *Abbott v. Vill. of Winthrop Harbor,* 205 F.3d 976, 981 (7th

Cir. 2000). An underlying constitutional claim "is a necessary element of a *Monell* claim." *White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016).

> Courts have identified three ways in which a municipality can be liable to a plaintiff for a civil rights violation resulting from government policy:
>
> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Abbott,* 205 F.3d at 981. At this stage, the Court accepts as true Marc's alleged underlying constitutional violations resulting from an unreasonable search and false arrest. Additionally, Southport has not put forward an argument that the underlying constitutional claims are invalid. Nevertheless, Southport contends that Marc's *Monell* claim and the claim against Chief Vaughn in his official capacity, are based on an impermissible theory of *respondeat* superior, which the parties agree cannot form the basis of a *Monell* claim. (Filing No. 13 at 4; Filing No. 23 at 3.) Marc responds that the action against Southport is based on the actions of Vaughn, its chief of police. Specifically, Marc contends that under Indiana law a chief of police is the final policymaker for a municipal police department which can serve as the basis for municipal liability under *Monell*. Marc is correct in that the Seventh Circuit has held that "a police chief in Indiana is the final policymaker for his municipal police department." *Eversole v. Steele,* 59 F.3d 710, 716 (7th Cir. 1995). An allegation that a final policymaker caused the constitutional injury is sufficient for a *Monell* claim. Because a police chief is the final policymaker for his municipal police department, Marc clears the initial hurdle, at this stage, as he has alleged factual allegations that Chief Vaughn was personally involved in directing and providing false information for the unreasonable search of his home and his false arrest in violation of the Fourth Amendment, which the Court accepts as true. Thus, Defendants' Motion is **denied** as to Southport.

Turning to the official capacity claim against Chief Vaughn, "[u]nder 42 U.S.C. § 1983, official capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent.'" *Monell,* 436 U.S. at 690 n. 55. Any official capacity claims are really claims against the government entity." *Campbell v. Town of Austin,* No. NA 01-222-C H/K, 2004 WL 256343, at *4 (S.D. Ind. Feb. 10, 2004). Defendants contend that Marc's claim against Chief Vaughn, in his official capacity, must be dismissed because it is in effect, an action against the city itself. The Court agrees. Vaughn's official capacity claim is duplicative of the claim against Southport, and Marc has not responded to Defendants' contention. Thus, it is waived. Accordingly, Chief Vaughn is dismissed in his official capacity.

2. **Chief Vaughn's Individual Capacity**

"A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) (citation omitted). Defendants contend that Marc's claim against Chief Vaughn in his individual capacity should be dismissed because he was not personally involved with any actions that violated Marc's constitutional rights, namely that it was Swanson who obtained the search warrant (for Shara's home but identified as Marc's home in the probable cause affidavit) and arrested Marc.

Marc's Complaint alleges that Chief Vaughn was physically present during the search of his home and that he and Swanson seized personal items from Marc's home. (Filing No. 1-1 at 6.) In addition, his "Complaint alleges that Vaughn directed Swanson to arrest [Marc] by supplying Swanson with false information, which Swanson then presented to the Marion Superior Court in order to obtain a search warrant on the house of Vaughn's political enemy, Shara". (Filing No. 23 at 5.) Marc contends that the officers knowingly, falsely portrayed Shara's house to be his

6

residence when they knew it to be Shara's. "While the defendant need not have participated directly in the deprivation of the plaintiff's constitutional right to be held liable, he or she must nonetheless have 'known about the conduct, facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see.'" *Rasho,* 856 F.3d at 478. Although Chief Vaughn did not directly participate in the execution of the search of Shara's home and Marc's arrest[1], Marc has presented facts that Chief Vaughn was an integral part in initiating, facilitating, condoning, approving, and turning a blind eye to the events that allegedly deprived him of his constitutional rights, which the Court accepts as true. Defendants' motion to dismiss the § 1983 claim against Chief Vaughn in his individual capacity is **denied**, as Marc has alleged facts that support Chief Vaughn's personal involvement in directing the deprivation of his constitutional rights.

**B.** **State Law Claims**

As noted previously, Marc has withdrawn all state law claims in this case other than the false arrest claim against Southport. Defendants have not moved to dismiss Marc's false arrest claim. Thus, the Court need not consider Defendants' ITCA argument. In any event, false arrest, if shown, bars application of law enforcement immunity under ITCA. Indiana Code § 34–13–3–3(8) explicitly provides immunity for governmental employees carrying out law enforcement duties, unless the act of enforcement constitutes false arrest or imprisonment. *Johnson ex rel. Indiana Dep't of Child Servs. v. Marion Cty. Coroner's Office,* 971 N.E.2d 151, 156 (Ind. Ct. App. 2012).

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion for Judgment on the Pleadings ([Filing No. 12](#)) is **GRANTED in part** and **DENIED in part.** It is **granted** as to Marc's claim

---

[1] The Complaint alleges only that Chief Vaughn seized Marc's personal educational property during the search of his home. ([Filing No. 1-1 at 6](#) ¶25.)

against Chief Vaughn in his official capacity. It is **denied** as to Marc's federal claims against Chief Vaughn, in his individual capacity, Swanson, in his individual capacity, and the *Monell* claim against Southport. Marc's illegal search and false arrest claims also **remain pending** as Southport did not move for judgment on those claims. Marc has withdrawn his state law claims for trespass, negligence, malicious prosecution, and intentional infliction of emotional distress, so those claims are **dismissed with prejudice**.

    **SO ORDERED.**

Date: 3/27/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP-New Albany
jlowe@k-glaw.com

R. Eric Sanders
KIGHTLINGER & GRAY LLP
esanders@k-glaw.com